## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. BRIAN HELMS, | : : : |
| c/o Young Law Group, P.C. 526 Township Line Rd., Suite 1920 Blue Bell, Pennsylvania | : : : : |
| BRINGING THIS ACTION ON BEHALF OF THE UNITED STATES OF AMERICA, | : : : |
| Relator-Plaintiff, | : : |
| v. | : : : |
| ROBY'S COUNTRY GARDENS, INC. 6201 Buchannan Drive Bardstown, Kentucky | : : |
| and | |
| JOSEPH RICHARD ROBY 706 Bloomfield Road Bardstown, Kentucky, | |
| Defendants. | |

**FILED UNDER SEAL PURSUANT TO
31 U.S.C. §3730**

Civil Action No.: _____

### FALSE CLAIMS ACT COMPLAINT

*Qui tam* Relator-Plaintiff, Brian Helms, by and through his undersigned attorneys, on behalf of the United States of America and himself, hereby demands judgment against Defendants, Roby's Country Gardens, Inc. and Joseph Richard Roby for the reasons and in the amounts set forth below.  In support thereof, Relator-Plaintiff avers as follows based upon personal knowledge and relevant documents:

1

## NATURE OF ACTION

1.      The instant action is brought pursuant to the *qui tam* provisions of the Federal False Claims Act, 31 U.S.C. § 3729 *et seq.* (hereinafter "FCA"), on behalf of the United States of America (hereinafter "United States").

2.      Defendants, Roby's Country Gardens, Inc. (hereinafter "Roby's CG") and its President and CEO, Joseph Richard Roby (hereinafter "Mr. Roby"), have repeatedly engaged in a variety of unlawful activities to defraud the United States of taxpayer funds.

3.      Specifically, since in or about 2007, Roby's CG and Mr. Roby (hereinafter collectively "Defendants") have systematically and knowingly submitted false statements and claims for payment, in connection with a contract with the United States Department of Defense (hereinafter "DOD"), in an effort to fraudulently and illegally obtain artificially inflated profits outside the confines and restrictions of said government contract.

## PARTIES

4.      The Government Plaintiff in this action is the United States of America ("United States").  Pursuant to the provisions of 31 U.S.C. §3730(b)(1) *et seq.*, Relator-Plaintiff is suing in the name of and on behalf of the United States.

5.      Mr. Brian Helms (hereinafter "Relator-Plaintiff") is an adult individual and resident of Bardstown, Kentucky.  Relator-Plaintiff was hired as a produce buyer by Roby's CG in February 2011 and was promoted to General Manager in or about June 2012.

6.      In or about December 2012, Mr. Roby granted Relator-Plaintiff access to certain Roby's CG computer systems; data included within that access confirmed Mr. Helms's concerns regarding the fraudulent conduct detailed herein.

7.      Mr. Roby is an adult individual and is a resident of Bardstown, Kentucky.

2

8.      At all times relevant and material hereto, Mr. Roby was the President, CEO, and sole owner of Roby's CG.  In fact, Mr. Roby effectively controlled and operated every aspect of Roby's CG at his sole direction and discretion.

9.      Furthermore, Mr. Roby was personally and intimately involved in the planning, execution, and attempts to conceal the fraudulent misconduct alleged herein.

10.     Roby's CG is a corporation organized and existing under the laws of the Commonwealth of Kentucky, with its principal place of business located at 6201 Buchannan Drive, Bardstown, KY 40004.

11.     At all times relevant and material hereto, Roby's CG was engaged in the business of produce wholesaling for various government and private sector buyers, including *inter alia*, the DOD.

## JURISDICTION AND VENUE

12.     This Court has federal subject matter jurisdiction over the instant action, pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a).

13.     Additionally, this Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because at all times relevant and material hereto, Defendants transacted business in this District and, upon information and belief, continue to do so.

14.     Venue is appropriate in this District as, at all times relevant and material hereto, Defendants transacted business in this District, and upon information and belief, continue to do so.  Moreover, venue is proper as a number of the incidents giving rise to this action occurred within this District.

## FILING UNDER SEAL

3

15.     In accordance with 31 U.S.C. § 3730(b)(2), this Complaint is filed *in camera* and will remain under seal and will not be served on the Defendants until the Court so orders.  A copy of the Complaint and a written disclosure of substantially all material evidence and information in the possession of Relator-Plaintiff will be served on the United States pursuant to 31 U.S.C. § 3730(b)(2) and FED.R.CIV.P. 4(i).

## PERTINENT REGULATORY BACKGROUND

16.     In 2004, the Federal Office of Management and Budget issued Circular A-87, which "establishes principles and standards for determining costs for Federal awards carried out through grants, cost reimbursement contracts, and other agreements with State and local governments and federally recognized Indian tribal governments (governmental units)."  2 C.F.R. § 225.5.

17.     The stated policy of the Circular is to provide uniformity and to establish the principles for determining "allowable costs."  2 C.F.R. § 225.20.

18.     Pertinent to the fraud detailed herein, to be allowable under Federal contracts, costs must be, "net of all applicable credits."  2 C.F.R. § 225, App. A.

## FACTS OF THE CASE

19.     Defendants employed rather simple, but nonetheless nefarious schemes, to illegally capitalize on a government contract to provide produce to nearby schools and military installations.

### *The Department of Defense Fresh Fruit and Vegetable Program*

20.     Due to the enormity of its mandate and the sheer volume of its personnel, the DOD is the nation's largest food service provider.

4

21.     The DOD Defense Logistics Agency Troop Support, Subsistence Directorate (hereinafter "DLA Troop Support"), provides produce and other foodstuffs to the nation's service men and women, in addition to DOD civilian personnel.

22.     Recognizing DOD's superior logistical resources and interested in increasing the availability of fresh produce for use in the nation's schools, in 1995, the United States Department of Agriculture ("USDA") Food and Nutrition Service entered into a partnership with DLA Troop Support, to utilize DOD's assets to purchase and distribute produce.

23.     The goal of the program (hereinafter "DOD Fresh") was to capitalize on DOD's superior purchasing, logistics, and distribution resources to assist in providing the nation's school children with access to quality, seasonal, fresh, and local produce.

24.     In addition to its nutritional goals, DOD Fresh aims to support American agriculture, by requiring that all produce purchased pursuant to the program is grown on American farms.

25.     Currently schools in forty-six states, the District of Columbia, Puerto Rico, the Virgin Islands, and Guam participate in the DOD Fresh program, with more than $100 million in anticipated purchases for the 2012-2013 school year.

26.     Contracts under the DOD Fresh program are facilitated by DOD's Defense Supply Center Philadelphia ("DSCP") in Philadelphia, Pennsylvania.

27.     Prospective vendors, such as Defendants, submit bids to DSCP for contract awards which are distributed throughout the United States by regions or zones.

28.     Upon information and belief, most, if not all, DOD Fresh contracts awarded by the DSCP are fixed-price cost reimbursable contracts.

29.     Contracts of this type, stipulate that a vendor may charge the government-buyer (i.e., schools or military facilities) a "Contract Unit Price," which consists of the "Distribution Price," a contractually fixed profit margin, plus the "Delivered Price," the true cost of a case of produce (e.g., $5.00 over the true cost to the vendor, per case). These are otherwise known as "cost-plus contracts."

30.     Additionally, contracts awarded to vendors under the DOD Fresh program often stipulate for provision of produce to schools, as well as, neighboring military bases and facilities.

### *Roby's Country Gardens Inc.'s DOD Fresh Contract*

31.     In late 2007 Roby's CG was awarded a $7,950,000.00 DOD Fresh contract by DSCP to provide wholesale produce to DOD Fresh participant schools (hereinafter "participant schools") and military installations (hereinafter "participant military installations"). Attached hereto as Exhibit "1" is a true and correct copy of the 2011 Amendment and Modification of Roby's CG's original 2007 DOD Fresh contract. Pages 2-6 of Exhibit "1," add a contractual provision entitled IV. REBATES/DISCOUNTS AND PRICE-RELATED PROVISIONS and stipulate that "All other terms and conditions of the contract remain unchanged"; pages 7-83 contain DSCP's Solicitation/Contract/Order for Commercial Items (Standard Form 1449), setting forth the standard DOD Fresh contract provisions; and pages 84-87 contain Roby's CG's 2007 Business Proposal.

32.     In connection with this contract, a December 17, 2007 press release from the DOD regarding DLA Troop Support contracts, a true and correct copy of which is attached hereto as Exhibit "2," announces that Roby's CG was "awarded a maximum $7,950,000.00 fixed price with economic price adjustment, total set aside contract for fresh fruit and vegetable support."

6

33.     Since 2007 Roby's CG has entered into annual DOD Fresh contracts with DSCP, substantively similar to its original contract, for amounts ranging from $4,000,000.00 to $8,000,000.00.

34.     Pertinent language of Defendants 2007 DOD Fresh contract, and by implication all subsequent contracts, includes the following information related to pricing:

A.     Pricing will be based on the following formula:
**Unit Price = Delivered Price + Distribution Price**

B.     Definitions

1.     <u>Unit Price</u> – The unit price is defined as the total price charged to DSCP per unit for a product delivered to the government.

2.     <u>Delivered Price</u> – The "delivered price" is defined as the last invoice price of a product the vendor has paid a manufacturer or supplier or grower for that product delivered to is distribution point.  This is sometimes referred to as "landed cost."

3.     <u>Distribution Price</u> – The distribution price is defined as a firm fixed price, offered as a dollar amount, which represents all elements of the contract price other than the delivered price.  The distribution price typically consists of the contractor's projected general and administrative expenses, overhead, packaging costs, transportation costs, from the contractor's distribution point, any other projected expenses associated with the delivery and profit. This dollar amount shall remain constant for the complete term of the base period.

Exhibit "1," pg. 74.

35.     Robys CG's contract contains the following language, requiring that all rebates, credits, or discounts be forwarded to the government buyer.  "All NAPA [National Allowance Program Agreement] discounts, food show discounts, early payment discounts…and other discounts, rebates, allowances or other similar economic incentives or benefits received by the

Contractor at any time during the period of performance **shall be passed to the Government via a reduced catalog price.**" (emphasis added). Exhibit "1," pg. 4.

36. In addition to its discount and rebate provisions, Roby's CG's DOD Fresh contract contains language requiring, "that its delivered price [to government buyers] **is equal to or lower than its delivered price to its commercial customer accounts.**" (emphasis added). Exhibit "1," pg. 4.

37. Finally, an additional pricing provision contains the following "Best Price Guarantee":

> During contract performance, the offeror shall provide unit prices that are **equal or lower than its most favored commercial customers, including any applicable discounts and allowances.**

> Exhibit "1," pg. 17.

38. Roby's CG's 2007 Business Proposal, located on pages 84-87 of Exhibit "1," establishes a "Distribution Price" of $2.25 above the "Delivered Price" (or true cost), per case of produce, sold to participant schools and a "Distribution Price" of $1.00 above "Delivered Price" (or true costs), per case of produce, sold to participant military installations. According to Relator-Plaintiff the code "DP" contained within this document represents "Distribution Price," "Group 1" denotes participant military installations, and "Group 2" indicates participant schools.

39. Relator-Plaintiff asserts that over time, the terms of DOD Fresh contracts subsequent to the original 2007 award, have raised Roby's CG's "Distribution Price" to $2.50 above the "Delivered Price" (or true cost), per case of produce, sold to participant schools and $1.50 above "Delivered Price" (or true costs), per case of produce, sold to participant military installations.

40.     Presently in 2013, Roby's CG operates under a $4,000,000.00 DOD Fresh contract awarded by DSCP, containing the above-referenced "Distribution Prices" (or fixed profit margins) of $2.50 and $1.50, distributing produce to participant schools and military installations in Kentucky, Ohio, and Indiana.

41.     Pursuant to its various DOD Fresh contracts, Defendants have distributed produce to hundreds of government buyers, including *inter alia*, participant schools, YKYA12, YKY394, YKYS42, YIN154, YIN163, YKY082, YKY146, YKYA01, YKYA02, YKYA03, YKYA04, YKYA05, YKYA07, YKYA08, YKYA09, YKYA10, YKYA11, YKYU12, YKYG01, YKY028, YKYM35, YKY118, YKY243, YKY098, YKY983, and military installations such as, Wright Patterson AFB, Ohio, Ft. Knox, Kentucky, Ft. Campbell, Kentucky, Grissom AFB, Indiana, and Camp Atterbury, Indiana.  Codes such as YKYA12 are the government's own internal reference codes for participant schools.

42.     At all times relevant and material hereto, Roby's CG was obligated to abide by and obey all applicable federal laws and regulations governing contractual relationships with the United States.

### *Defendants' Schemes to Defraud the United States*

43.     Since Roby's CG's initial 2007 DOD Fresh contract award, Defendants have undertaken purposeful and unlawful efforts to defraud the United States.

44.     Relator-Plaintiff asserts that Defendants submit more false claims in connection with sales to participant schools than participant military installations, as the latter are more stringent in their oversight of purchases.

### *The Rebate Scheme against Participant Schools and Military Installations*

45.     In order to fraudulently profit under its DOD Fresh contract, Defendants bill participant schools and participant military installations for produce at costs above their contractually fixed rates (i.e., greater than $2.50 and $1.50 over true cost, respectively).

46.     Table One, below, illustrates a sample of fraudulent sale of strawberries, Romaine lettuce, and California Green Leaf lettuce, made by Defendants to participant schools and the illegal profits garnered therefrom.  As will be explained in detail below, Defendants utilized rebates, fraudulently withheld from government buyers to perpetrate this scheme.  Much of the information contained in Table One is taken from Defendants' late February 2013 Warehouse Inventory Manifest for Strawberries, Defendants' early January 2013 Warehouse Inventory Manifest for Romaine Lettuce, and Defendants' early January 2013 Warehouse Inventory Manifest for California Green Leaf Lettuce, true and correct copies of which are attached hereto as Exhibit "3," Exhibit "4," and Exhibit "5," respectively.

47.     Exhibit "3," Exhibit "4," and Exhibit "5" document Defendants' purchase and sale of strawberries during late February 2013, Romaine lettuce in early January 2013, and California Green Leaf lettuce in early 2013; with "PO" representing a purchase order, "SO" representing a sale order, "WHOM" symbolizing the buyer or seller, "QUAN" identifying the number of case involved in the transaction, and "UNIT" indicating the purchase or sale price.

48.     The Defendants' contractually fixed profit or "Distribution Price" is limited to $2.50, per case, for sales to participant schools.  As illustrated in Table One, dividing Defendants' actual profit per sale by the quantity of cases sold, reveals that Defendants' profit margins are far greater than $2.50, per case; $8.10 for strawberries, $6.40 for Romaine lettuce, and $12.15 for California Green Leaf lettuce.

**TABLE ONE**

| Product (Per Case) | Sale Date | Part. School | Quantity | Defts.' Sale Price | Defts. True Cost | Defts.' Actual Profit | Defts.' Illegal Profit |
|---|---|---|---|---|---|---|---|
| Strawberries | 2/24/13 | YKYA12 | 1 | $19.50 | $11.40 | $8.10 | $5.60 |
| | 2/24/13 | YKY394 | 4 | $78.00 | $45.60 | $32.40 | $22.40 |
| | 2/24/13 | YKYS42 | 2 | $39.00 | $22.80 | $16.20 | $11.20 |
| | 2/24/13 | YIN154 | 1 | $19.50 | $11.40 | $8.10 | $5.60 |
| | 2/24/13 | YIN163 | 2 | $39.00 | $22.80 | $16.20 | $11.20 |
| | 2/24/13 | YKY082 | 15 | $292.50 | $171.00 | $121.50 | $84.00 |
| | 2/24/13 | YKY146 | 2 | $39.00 | $22.80 | $16.20 | $11.20 |
| Romaine Lettuce | 1/7/13 | YKYA01 | 1 | $22.00 | $15.60 | $6.40 | $3.90 |
| | 1/7/13 | YKYA02 | 1 | $22.00 | $15.60 | $6.40 | $3.90 |
| | 1/7/13 | YKYA03 | 1 | $22.00 | $15.60 | $6.40 | $3.90 |
| | 1/7/13 | YKYA04 | 1 | $22.00 | $15.60 | $6.40 | $3.90 |
| | 1/7/13 | YKYA05 | 1 | $22.00 | $15.60 | $6.40 | $3.90 |
| | 1/7/13 | YKYA07 | 1 | $22.00 | $15.60 | $6.40 | $3.90 |
| | 1/7/13 | YKYA08 | 1 | $22.00 | $15.60 | $6.40 | $3.90 |
| | 1/7/13 | YKYA09 | 1 | $22.00 | $15.60 | $6.40 | $3.90 |
| | 1/7/13 | YKYA10 | 1 | $22.00 | $15.60 | $6.40 | $3.90 |
| Cal. Green Leaf Lettuce | 1/7/13 | YKYA01 | 1 | $23.75 | $11.60 | $12.15 | $9.65 |
| | 1/7/13 | YKYA02 | 1 | $23.75 | $11.60 | $12.15 | $9.65 |
| | 1/7/13 | YKYA03 | 1 | $23.75 | $11.60 | $12.15 | $9.65 |
| | 1/7/13 | YKYA04 | 1 | $23.75 | $11.60 | $12.15 | $9.65 |
| | 1/7/13 | YKYA05 | 1 | $23.75 | $11.60 | $12.15 | $9.65 |
| | 1/7/13 | YKYA07 | 1 | $23.75 | $11.60 | $12.15 | $9.65 |
| | 1/7/13 | YKYA08 | 1 | $23.75 | $11.60 | $12.15 | $9.65 |
| | 1/7/13 | YKYA09 | 1 | $23.75 | $11.60 | $12.15 | $9.65 |

| | 1/7/13 | YKYA10 | 1 | $23.75 | $11.60 | $12.15 | $9.65 |
| | 1/7/13 | YKYA11 | 2 | $47.50 | $23.20 | $24.30 | $19.30 |

49.    The following example, explains in detail, the manner in which Defendants utilize rebates to defraud the United States through its DOD Fresh contract.

50.    For instance, Exhibit "3," an internal Roby's CG inventory report documents a February 21, 2013 purchase of four hundred and thirty-two (432) cases of strawberries from third-party seller, Blazer Wilkinson, LP, at a true cost of $11.40 per unit ($9.90 per case + $1.50 of legitimate shipping fees).  The "BW" shown on Exhibit "3" is Defendants' internal reference code for third-party seller, Blazer Wilkinson, LP.

51.    In accordance with Defendants' DOD Fresh contract, these strawberries should be billed to participant schools at $13.90 per case ($11.40 true cost + the contractually agreed to $2.50 fee).

52.    However, Exhibit "3" also documents that Roby's CG fraudulently sold the same strawberries to a number of participant schools for $19.50 a case, including *inter alia*, a February 24, 2013 sale to participant school, YKYA12; an astonishing $5.60 mark-up per case, well outside the confines of its contractual arrangement with the federal government.  As stated earlier, YKYA12 is the government's own internal reference codes for this participant school.

53.    As detailed above, Defendants were contractually and legally bound to sell this case of strawberries for $13.90, $2.50 more than the $11.40 Defendants actually paid for the product.  Thus, the sale was fraudulent and constitutes a false claim issued to the United States.

54.    The corresponding invoice from Blazer Wilkinson, LP indicates a fabricated cost of $13.40 per case for the shipment of strawberries, which represents the actual charge of $9.90 and a $3.50 rebate, to be issued to Roby's CG by the seller at the end of the month.  A true and

12

correct copy of Blazer Wilkinson, LP's Feb. 19, 2013 invoice to Defendants is attached hereto as Exhibit "6."

55.     At the direction of Mr. Roby, a Roby's CG employee documents the rebate, on the very same invoice, by hand-writing the rebated amount, $1,512.00 ($3.50 x 432 cases) and the Blazer Wilkinson, LP's corresponding check number.

56.     Not only did Defendants fail to credit the $3.50 rebate to the participant schools, thus misrepresenting the true costs, Defendants unlawfully charged an additional $2.10 per case. This behavior is an illegal violation of applicable contracting regulations and in direct contravention to the terms of Roby's CG's DOD Fresh contract. *See* Exhibit "1," pgs. 4, 17.

57.     In addition to fraudulent pricing activities, Defendants undertook concerted efforts to cover the tracks of their illegal conduct.

58.     According to Relator-Plaintiff, Roby's CG and/or Mr. Roby have tacit agreements with several third-party sellers, including *inter alia,* Blazer Wilkinson, LP, that agree to participate in the rebate scheme and submit invoices falsely portraying Roby's CG's true costs, in order to ensure a continued business arrangement.

59.     The agreed to rebate amount, as set by Defendants, is $3.50 per case of produce, for each purchase made from the aforementioned third-party sellers.

60.     Relator-Plaintiff asserts that Defendants insist that third-party sellers provide falsified invoices to ensure that they have documentation to support their fraudulent pricing, should DOD ask questions.

61.     However, as demonstrated in the examples above, Defendants have become so brazen in their efforts to defraud the United States that they now regularly charge outside the "cushion" provided by the falsified invoices.

62.    Relator-Plaintiff maintains that Defendants' internal computer systems and bookkeeping records contain thousands of fraudulent claims, such as those detailed above in Table One.

### Product Quality Misrepresentation Scheme

63.    An additional fraudulent scheme perpetrated by the Defendants, involves falsely representing the quality of product provided under its DOD Fresh contract.

64.    Many types of produce available in the wholesale market come in a variety of grades, which naturally fluctuate in price depending on their level of quality (e.g., the highest grade of Red Delicious apples may sell for $20.00 a case, whereas a lower grade may sell for $15.00 a case).

65.    In order to illegally capitalize on this fact, when filling orders from participant schools and participant military installations for high grade produce, Defendants routinely provide low grade product and falsely represent its quality in billing statements.

66.    For example, when filling a participant school's order for twenty crates of high quality apples, Defendants will purchase one crate of high quality conforming goods and nineteen crates of lower quality apples, and fraudulently represent on its billing statement that all twenty crates contain the more expensive high quality apples.

67.    Furthermore, as with the rebate scheme detailed above, Defendants will obtain a falsified invoice from its third-party seller, fraudulently representing a purchase of twenty crates of high grade apples to cover the tracks of their illegal conduct.

68.    Naturally, as Defendants do not pass their savings on to the participant school or participant military installation, they are able to add the contractually fixed fee to a fabricated

"cost," much higher than the true cost required by the contract, allowing them to illegally profit from the sale.

### *Product Source and Sale Price Misrepresentation Scheme*

69.     Defendants engage in activities which actively misrepresent the source (i.e., third-party seller) of the produce later sold to participant schools and military installations, allowing for further manipulation of its "Delivered Prices."

70.     Table Two below, documents a number of illegal sales of Fuji apples made by Defendants to participant schools and the illegal profits garnered therefrom.  As will be explained in detail below, Defendants fraudulently misrepresented the source and original cost of said Fuji apples in order to perpetrate this scheme.  Much of the information contained in Table Two is taken from Defendants' mid-March 2013 Warehouse Inventory Manifest for Fuji Apples, a true and correct copy of which is attached hereto as Exhibit "7."

71.     Exhibit "7" documents Defendants' purchase and sale of Fuji Apples in mid-March 2013; with "PO" representing a purchase order, "SO" representing a sale order, "WHOM" symbolizing the buyer or seller, "QUAN" identifying the number of case involved in the transaction, and "UNIT" indicating the purchase or sale price.

72.     The Defendants' contractually fixed profit or "Distribution Price" is limited to $2.50, per case, for sales to participant schools.  As illustrated in Table Two, dividing Defendants' actual profit per sale by the quantity of cases sold reveals that Defendants' profit margin, per case, is $19.48, far greater than $2.50.

### TABLE TWO

| Product (Per Case) | Sale Date | Part. School | Quantity | Defts.' Sale Price | Defts. True Cost | Defts.' Actual Profit | Defts.' Illegal Profit |
|---|---|---|---|---|---|---|---|
| Fuji Apples | 3/11/13 | YKYU12 | 6 | $238.50 | $121.62 | $116.88 | $101.88 |

|  | 3/11/13 | YKYG01 | 1 | $39.75 | $20.27 | $19.48 | $16.98 |
|--|---------|--------|---|--------|--------|--------|--------|
|  | 3/11/13 | YKY028 | 3 | $119.25 | $60.81 | $58.44 | $50.94 |
|  | 3/11/13 | YKYM35 | 1 | $39.75 | $20.27 | $19.48 | $16.98 |
|  | 3/13/13 | YKY118 | 1 | $39.75 | $20.27 | $19.48 | $16.98 |
|  | 3/13/13 | YKY243 | 1 | $39.75 | $20.27 | $19.48 | $16.98 |
|  | 3/17/13 | YKY098 | 2 | $79.50 | $40.54 | $38.96 | $33.96 |
|  | 3/17/13 | YKY983 | 2 | $79.50 | $40.54 | $38.96 | $33.96 |
|  | 3/18/13 | YKYA07 | 1 | $39.75 | $20.27 | $19.48 | $16.98 |
|  | 3/18/13 | YKYA08 | 1 | $39.75 | $20.27 | $19.48 | $16.98 |
|  | 3/18/13 | YKYA09 | 1 | $39.75 | $20.27 | $19.48 | $16.98 |
|  | 3/18/13 | YKYA10 | 1 | $39.75 | $20.27 | $19.48 | $16.98 |
|  | 3/18/13 | YKYA11 | 1 | $39.75 | $20.27 | $19.48 | $16.98 |

73.     The following example, explains in detail, the manner in which Defendants obtain fraudulent profits under its DOD Fresh contract by falsely representing the source and original cost of produce sold to participant schools and military installations.

74.     For example, Exhibit "7," an internal Roby's CG inventory report documents a March 11, 2013 purchase of one hundred and forty-seven (147) cases of Fuji apples (125 CT) from third-party seller, Washington Fruit & Produce Co., at a true cost of $20.27 per unit ($15.90 per case + $4.37 of legitimate shipping fees).  The symbol "WFPC" shown on Exhibit "7" is Defendants' internal reference code for third-party seller, Washington Fruit & Produce Co.

75.     In accordance with Defendants' DOD Fresh contract, these Fuji apples should be billed to participant schools at $22.77 per case ($20.27 true cost + the contractually agreed to $2.50 fee).

76.     However, Exhibit "7" demonstrates that Roby's CG fraudulently sold the same Fuji apples to a number of participant schools for $39.75 a case, including *inter alia*, a March 11, 2013 sale to participant school, YKYU12; an astounding $16.98 mark-up per case, well outside the confines of its contractual arrangement with the federal government.  As stated earlier, YKYU12 is the government's own internal reference codes for this particular participant school.

77.     The corresponding invoice reveals that Defendants did in fact purchase one hundred and forty-seven (147) cases of Fuji apples (125 CT) from Washington Fruit & Produce, Co., at a price of $15.90, per case.  A true and correct copy of Washington Fruit & Produce Co.'s March 6, 2013 invoice to Defendants is attached hereto as Exhibit "8."

78.     In order to perpetrate this fraud, Defendants obtain a price list from a more expensive third-party seller, in this instance L&M Companies, a higher priced competitor of Washington Fruit & Produce, Co., and represent to government buyers that the product at issue was sourced from the more expensive third-party seller with the corresponding higher price.  A true and correct copy of L&M Companies' March 7, 2013 Price List is attached hereto as Exhibit "9."

79.     Of course this representation is entirely false as Defendants in fact purchased one hundred and forty-seven (147) cases of Fuji apples (125 CT) from Washington Fruit & Produce and failed to accurately document their true costs in the "Delivered Price" relayed to government buyers.

80.     Relator-Plaintiff asserts that Defendants' pricing misrepresentations capitalize on naturally fluctuating prices in the produce industry.

81.     For instance, particular produce (e.g., Fuji apples) may legitimately sell at a point for $30.00 a case, but may dramatically drop in price months later due to market forces.

82.     As market prices drop, Defendants illegally fail to reduce the price charged to participant schools and participant military installations, relying on government buyers' unfamiliarity with the nuances of the ever changing produce market.

83.     Relator-Plaintiff asserts that this deception "allows" Defendants to charge participant schools and military installations the outlandish mark-ups described herein.

84.     Relator-Plaintiff maintains that Defendants' internal computer systems and bookkeeping records contain thousands of fraudulent claims, such as those detailed above in Table Two.

### Best Pricing Violation

85.     Pursuant to applicable regulations and the terms of its DOD Fresh contract, Defendants are obligated to charge participant schools and military installations an equal or lower price than its commercial customers.  *See* Exhibit "1," pgs. 4, 17.

86.     However, Defendants routinely sell produce to participant schools and military installations at substantially higher prices than its commercial customers for the exact same product.

87.     For instance, Exhibit "7," documents that Roby's CG sold the Fuji apples, discussed above, to participant schools for $39.75 per case.

88.     Exhibit "7" also, demonstrates that Defendants in fact sold the same Fuji apples to a commercial customer, retail distributer Riverside Foods, at only $28.25 per case.  The symbol "RIVER" shown on Exhibit "7" is Defendants' internal reference code for commercial customer, Riverside Foods.

89.     Defendants' sale of Fuji apples to a commercial customer for $28.25 per case, while simultaneously selling the same product to participant schools for $39.75, is in direct

contravention to the provisions of Roby's CG's DOD Fresh contract requiring, "that its delivered price [to government buyers] *is equal to or lower than its delivered price to its commercial customer accounts.*" *See* Exhibit "1," pgs. 4, 17.

90.    Similarly, Exhibit "5" documents that Roby's CG sold the California Green Leaf lettuce, discussed above, to participant schools for $23.75 per case.

91.    Exhibit "5" also demonstrates that Defendants in fact sold the same lettuce to commercial customers Cracker Barrel Fern Creek, U.S. Penitentiary McCreary, Natural Bridge State Park, and Owsley County Elementary School for $18.40, $15.75, $18.00, and $19.50 a case, respectively. The symbols "CBFC," "USPM," "NBSP," and "OCE" shown on Exhibit "7" are Defendants' internal reference codes for commercial customers, Cracker Barrel Fern Creek, U.S. Penitentiary McCreary, Natural Bridge State Park, and Owsley County Elementary School.

92.    Defendants' failure to charge participant schools and participant military installations "Delivered Prices," at equal or lesser amounts than its commercial customers, is a patent violation of its DOD Fresh contract and applicable federal regulations.

### *Defendants' Illegal Profits*

93.    As detailed above, Defendants engage in numerous fraudulent activities to profit illegally from their DOD Fresh contract.

94.    Additional documents procured by Relator-Plaintiff, illustrate the amount of fraudulently gained monies and provide further evidence that Defendants' profit margins, per case of produce, are far outside the confines of its contractually fixed rates ($2.50 for participant schools and $1.50 for participant military installations).

95.    Roby's CG's fiscal year summaries for 2012 and 2013 demonstrate the efficacy of Defendants fraudulent activities, as detailed herein. True and correct copies of Roby's CG's

fiscal year summaries for 2012, and year to date 2013, are attached hereto as Exhibit "10" and Exhibit "11."

96.    Exhibits "10" and "11" itemize Defendants' sales data for their respective fiscal years, containing total orders, gross profits, and cases sold, by customer.  On Exhibits "10" and "11" "DEFENSE SUP. CTR." represents combined sales to all participant schools, "military" represents combined sales to all participant military installations, "UNITS" means total cases of produce sold, and "ACT MRG" indicates Defendants' gross profits.

97.    Simple math illustrates that Defendants' profit margins significantly exceed the contractually fixed rates.  Dividing the gross sales by total cases of produce sold, as indicated on Exhibits "10" and "11," yields the profit margins for sales to participant schools and military installations.

98.    Table Three, below, uses data from Exhibits "10" and "11" to document Defendants' illegal profits.  Defendants' contractually fixed profit or "Distribution Price" is limited to $2.50 per case of produce, for sales to participant schools and $1.50, per case of produce, for sales to participant military installations.  As illustrated in Table Three, simply dividing the total gross profits by the number of cases sold, reveals that Defendants' actual profit margins for schools and military installations are in excess of their contractual rate.

## TABLE THREE

| Fiscal Year | | Defts.' Gross Profits | Total Cases Sold | Defts.' Actual Profit Per Case | Defts.' Total Legal Profit | Defts.' Total Illegal Profit |
|---|---|---|---|---|---|---|
| 2012 | Schools | $751,697.00 | 78,747 | $9.55 | $196,867.50 | $554,829.50 |
| | Military | $307,344.00 | 58,447 | $5.26 | $87,670.50 | $219,673.50 |
| 2013 (to | Schools | $227,521.00 | 26,780 | $8.50 | $66,950.00 | $160,571.00 |

| date) | | | | | | |
|---|---|---|---|---|---|---|
| | **Military** | $67,794.00 | 11,542 | $5.87 | $17,313.00 | $50,481.0 |

99.     In fiscal year 2012, Roby's CG made $751,697.00 in gross profits from participant schools for the sale of 78,747 cases of produce ($751,697.00 ÷ 78,747 = $9.55 profit per case).  Roby's CG's $9.55 profit per case of produce sold to participating schools exceeds the contractually-fixed rate of $2.50 per case under its DOD Fresh contract.

100.     In 2012, Defendants fraudulently obtained $554,829.50 in illegal profits from sales to schools.

101.     Additionally, in fiscal year 2012, Roby's CG made $307,344.00 in gross profits from participant military installations for the sale of 58,447 cases of produce ($307,344.00 ÷ 58,447 = $5.26 profit per case).  Once again, Roby's CG's $5.26 profit per case of produce sold to participating military installations clearly exceeds the contractually fixed rate of $1.50 per case under its DOD Fresh contract.

102.     In 2012, Defendants fraudulently garnered $219,673.50 in illegal profits from sales to military installations.

103.     Currently in fiscal year 2013, Roby's CG is on track to meet or exceed the value of its illegally garnered profits in fiscal year 2012, with $227,521.00 in gross profits from participant schools for the sale of 26,780 cases of produce ($227,521.00 ÷ 26,780 = $8.50 profit per case).

104.     Thus far in 2013, Defendants have fraudulently acquired $160,571.00 in illegal profits from sales to participant schools.

105.    Moreover, in 2013 Roby's CG has made $67,794.00 in gross profits from participant military installations for the sale of 58,447 cases of produce ($307,344.00 ÷ 11,542 = $5.87 profit per case).

106.    Sales to participant military installations, thus far in 2013, have produced $50,481.00 in illegal profits for Defendants.

107.    These numbers, are but a snapshot of the amount of illegal profits fraudulently gained by Defendants' under their DOD Fresh contract during the relevant time period in question.

## CONCLUSION

108.    Since 2007 Roby's CG and Mr. Roby have perpetrated numerous calculated and illegal schemes, undertaken in an effort to defraud the United States of taxpayer dollars, under the guise of its DOD Fresh Contract.  Moreover, Defendants' efforts have been successful, resulting in millions of dollars in illegal profits facilitated by untold numbers of false and fraudulent claims for payment submitted to the United States government, via the DOD.

## COUNT I – FALSE CLAIMS ACT
### 31 U.S.C. §3729(a)(1)(A) and (a)(1)B)

109.    Relator-Plaintiff incorporates the allegations contained in the aforesaid paragraphs as if the same were set forth at length herein.

110.    This Count is brought by Relator-Plaintiff in the name of the United States under the *qui tam* provisions of 31 U.S.C. § 3730 for Defendants' violations of 31 U.S.C. § 3729(a)(1)(A) and (a)(1)(B).

111.    Defendants knowingly presented or caused to be presented, false or fraudulent claims for payment or approval to the United States including improper claims for payment pursuant to the terms of their DOD Fresh contract in violation of 31 U.S.C. § 3729(a)(1)(A).

112.   Defendants' actions in knowingly presenting or causing to be presented false claims for payment pursuant to the terms of their DOD Fresh contract were done knowingly as that term is defined by the False Claims Act, 31 U.S.C. § 3729(b)(1)(A)(i-iii), and § 3729(b)(1)(B).

113.   Defendants also knowingly made, used or caused to be made or used, false records and statements material to a false or fraudulent claim in violation of 31 U.S.C. § 3729(a)(1)(B).

114.   In violation of 31 U.S.C. § 3729(a)(1)(B), Defendants knowingly created and used, or caused to be made or used, false invoices that altered Defendants' "Delivered Prices" by fraudulently inflating prices and/or misrepresenting the sources of its produce.

115.   Defendants' actions in knowingly creating and using, or causing to be made or used, false or fraudulent documents were done knowingly as that term is defined by the False Claims Act, 31 U.S.C. § 3729(b)(1)(A)(i-iii), and § 3729(b)(1)(B).

116.   Defendants' also routinely failed to sell its product to government buyers at a cost equal to or lesser than their commercial customers, in violation of the DOD Fresh contract and applicable contracting regulations.

117.   Claims for payment pursuant Defendants' DOD Fresh contract, which violate both the terms of said contract and applicable federal regulations regarding government contracts are false claims.

118.   By virtue of the false or fraudulent claims made or caused to be made by the Defendants, the United States has suffered damages and therefore is entitled to multiple damages under the False Claims Act, to be determined at trial, plus a civil penalty for each violation.

WHEREFORE, Relator-Plaintiff, Brian Helms, on behalf of himself and the United

States government, requests the following relief:

(a)    that the Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States Government has sustained because of Defendants' actions, plus a civil penalty of $11,000 for each action in violation of 31 U.S.C. § 3729, and the costs of this action, with interest, including the costs to the United States Government for its expenses related to this action;

(b)    that in the event that the United States Government continues to proceed with this action, Relator be awarded an amount for bringing this action of 25% of the proceeds of the action or the settlement of any such claim;

(c)    that in the event that the United States Government does not proceed with this action, Relator be awarded an amount for collecting the civil penalty and damages of 30% of the proceeds of this action or the settlement of any such claim;

(d)    that Relator be awarded all costs, attorneys' fees, and litigation expenses;

(e)    that the United States Government and Relators receive all relief, both at law and in equity, to which they may reasonably appear entitled; and

(f)    Relator receive all relief available pursuant to 31 U.S.C. § 3730(h)(2) as compensation for the retaliation leading to his constructive termination, including but not limited to two times the amount of back pay, interest on the back pay , and compensation for any special damages sustained as a result of Defendants' discriminatory acts, including litigation costs and reasonable attorneys' fees.

Respectfully submitted,

Frederick M. Morgan, Jr. (0027687)
Morgan Verkamp, LLC
700 Walnut Street, Suite 400
Cincinnati, Ohio 45202
Tel: (513) 651-4400
Fax: (513) 651-4405
e-mail: Rick.Morgan@morganverkamp.com

24

Trial Attorneys for Relator

Eric L. Young (PA I.D. No. 84109)
James J. McEldrew, III (PA I.D. No. 36411)
YOUNG LAW GROUP, P.C.
526 Township Line Road, Suite 100
Blue Bell, PA 19422
Tel: 215-367-5151
Fax: 215-367-5143
e-mail:  eyoung@young-lawgroup.com

Attorneys for Relator-Plaintiff Brian Helms